# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **FURNACE AND TUBE SERVICE, INC.** | § § § | **PLAINTIFF/THIRD PARTY DEFENDANT/COUNTER DEFENDANT** |
| **v.** | § § | **CAUSE NO. 1:09CV374 LG-RHW** |
| **WESTCHESTER SURPLUS LINES INSURANCE COMPANY** | § § § | **DEFENDANT/THIRD PARTY PLAINTIFF/COUNTER CLAIMANT** |
| **v.** | § § § | |
| **THE GRAY INSURANCE COMPANY, and MISSISSIPPI PHOSPHATES CORP.** | § § | **THIRD PARTY DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [37] for Partial Summary Judgment filed by Mississippi Phosphates Corporation, which has been adopted [39] by Furnace and Tube Service, Inc. Mississippi Phosphates Corporation moves for summary judgment on the issue of coverage provided by the Westchester policy for loss of use of Mississippi Phosphates' plant. Mississippi Phosphates contends that if it prevails on its claim against Furnace and Tube for loss of use of the plant, the excess insurer, Westchester Surplus Lines Insurance Company, will be obligated to pay $5 million - its policy limit.

### FACTS AND PROCEDURAL HISTORY

This case is related to *Mississippi Phosphates Corp. v. Furnace and Tube Service, Inc., et al.*, No. 1:07cv1140 LG-RHW (S.D. Miss. filed Oct. 12, 2007), in which the parties partially litigated Mississippi Phosphates' claims against companies that had done work at its plant - Furnace and Tube Service, Inc. and Analytic Stress Relieving - and the extent of Gray Insurance Company's duty to indemnify Furnace and Tube. Mississippi Phosphates eventually settled $5

million of its damages caused by Furnace and Tube for a total of $4.2 million. Furnace and Tube paid $100,000, and Gray Insurance Company paid $4.1 million. Mississippi Phosphates released Gray from any further liability as part of the settlement agreement, but continues to seek damages above $5 million from Furnace and Tube. Furnace and Tube filed this declaratory judgment action against its excess insurer, Westchester, to compel it to provide a defense and coverage. Westchester denies that the settlement effectively exhausted the Gray policies, and contends it owes no duties to Furnace and Tube.

## DISCUSSION

Although this lawsuit concerns the Westchester insurance policy, the issue now before the Court involves the terms of the Gray Insurance Company policies issued to Furnace and Tube. As the Court determined in the underlying lawsuit, Louisiana law governs the interpretation of Gray's insurance policies. *See Miss. Phosphates Corp. v. Furnace & Tube Serv., Inc., et al.*, No. 1:07cv1140 LG-RHW (S.D. Miss. May 22, 2009) (Mem. Op. & Order Denying Mot. Summ. J.) In Louisiana, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Devillier v. Alpine Expl. Cos., Inc.*, 946 So. 2d 738, 745 (La. Ct. App. 2006) "Ambiguous policy provisions generally are to be construed against the insurer and in favor of coverage." *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43 (La. 2000). The Court finds no ambiguous provisions and will therefore enforce the contracts as written.

Mississippi Phosphates first argues that the improper welding performed by Furnace and Tube and the resultant leaking constitutes only one "occurrence" under the terms of Gray's policies, and therefore only $5 million in coverage was available to indemnify Furnace and Tube.

Mississippi Phosphates contends that this $5 million obligation was satisfied by the settlement agreement.

Westchester's response is that the leaks spanned at least two policy periods, and each policy period also began a new "occurrence" period. Therefore, Gray did not exhaust its limits of liability by paying $4.1 million, because there was $10 million in coverage provided by Gray's policies, not the $5 million the parties agreed to settle. Thus, Westchester's policy has not yet been triggered.

Mississippi Phosphates also argues that any exclusion in the Gray policies is irrelevant because the Westchester policy is an umbrella policy and does not follow the form of the Gray policies. Westchester disagrees. It is unnecessary to address this disagreement since this motion can be resolved on the coverage issue.

Only one provision of the Westchester policy is crucial to the Court's analysis - the Condition of "Loss Payable:"

> **C. Loss Payable**. Liability of the company with respect to any one occurrence shall not attach unless and until the insured, or the insured's underlying insurer, has paid the amount of underlying insurance stated in Declaration 5. **The insured shall make a definite claim for loss, for which the company may be liable within twelve (12) months after the insured has paid any amount of excess loss, as stated in Declaration 6; or after the insured's liability shall have been made certain by final judgment after actual trial; or by written agreement of the insured, the claimant, and the company**. Any subsequent payments made by the insured on account of the same occurrence shall be payable by the company within thirty (3) days after additional claim is made by the insured, and after the insured has shown proof in conformity with this policy.

Ct. R. 35-2 p. 11 (emphasis added). Under this provision, Westchester's obligation to Furnace and Tube in one policy period began once Gray, *et al.* entered into their settlement agreement. *See Gasquet v. Comm. Union Ins. Co.*, 391 So. 2d 466 (La. Ct. App. 1980) (a primary policy is

exhausted when the primary carrier secures for its insured a reduction in the insured's liability equal to the amount of the primary policy). However, the parties agree that there was damage to the Mississippi Phosphates Plant on three occasions spanning two policy periods. Mississippi Phosphates views these incidents as one "occurrence" with continuing damage. Westchester's view is that there were at least two "occurrences" - the warping and leaking during the 2006-2007 policy period and the leaking during the 2007-2008 policy period. Westchester's view is supported by Louisiana law and the Gray policy language.

There are three relevant Gray policies. Policy 116 is the primary layer with a $1 million limit per occurrence. The policy period is from October 1, 2006 to October 1, 2009, but the $1 million limit applies separately to each consecutive annual period. *Miss. Phosphates Corp. v. Furnace & Tube Serv., Inc., et al.*, No. 1:07cv1140 LG-RHW (Ct. R. 188-8, p. 18). Policy 077 is the excess layer with a $4 million limit per occurrence. The policy period is October 1, 2006 to October 1, 2007. *Id*. (Ct. R. 188-9). Policy 219 is the excess layer for October 1, 2007 to October 1, 2008. *Id*. (Ct. R. 188-10).

Gray's policies contain two similar definitions of "occurrence." The primary policy - 116 - defines it as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *Id*. (Ct. R. 188-8, p. 46). The excess policies - 077 and 219 - define "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in . . . property damage . . . during the policy period." *Id*. (Ct. R. 188-9, p. 13; Ct. R. 188-10, p. 13).

Louisiana interprets insurance contracts such that "when the word 'occurrence' is defined as an 'accident,' the occurrence of an unforeseen and unexpected loss constitutes an 'accident'

and therefore an 'occurrence.'" *Freeport-McMoRan Energy, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 233 Fed. Appx. 341, 345 (5th Cir. 2007) (quoting *N.A. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 943 So. 2d 429, 444 (La. Ct. App. 2006)). "'[A]ccident is defined from the viewpoint of the victim; losses that were unforseen and unexpected by the victim are the result of an accident.'" *Id*. From this, the Court concludes that there was one "occurrence" during the 2006-2007 policy period consisting of a series of events. *See Norfolk So. Corp. v. Ca. Union Ins. Co.*, 859 So. 2d 167, 192 (La. Ct. App. 2003) ("To the extent that the releases, drips, and spills were due to the woodpreserving operations in one policy period they are to be considered as one occurrence.") There was also an "occurrence" during the 2007-2008 policy period, when damage from leaking - unforseen and unexpected by Mississippi Phosphates - occurred again. The new policy period resulted in a new "occurrence." *Id*. Thus, two Gray policy periods were implicated, each with its own $5 million limit.

It is therefore the Court's opinion that Mississippi Phosphates has failed to show that it is entitled to judgment as a matter of law. Westchester's obligations to its insured begin after the $10 million limits of the underlying insurance have been exceeded.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [37] for Partial Summary Judgment filed by Mississippi Phosphates Corporation and adopted by Furnace and Tube Service, Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 8th day of April, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE